IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      Plaintiff,

vs.                                    Civ. No. 04-1118 JP/WPL

DHL EXPRESS (USA), INC.,
f/k/a Airborne Express, Inc.,
and AIR ONE TRANSPORT GROUP, INC.,
d/b/a Air One Transport of New Mexico,
L.L.C.,

      Defendants,

and

DEBRA SMITH,

      Plaintiff in Intervention,

vs.

DHL EXPRESS (USA), INC.,
f/k/a Airborne Express, Inc.,
and AIR ONE TRANSPORT GROUP, INC.,
d/b/a Air One Transport of New Mexico,
L.L.C.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On December 15, 2005, Defendant Air One Transport Group, Inc., d/b/a Air One

Transport Group of New Mexico, L.L.C. (Air One) filed Defendant Air One Transport Group,

Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 9).  Having considered

the briefs and relevant law, the Court finds that Air One's motion to dismiss should be denied.

A.  Background

        The Plaintiff (EEOC) brought this Title VII lawsuit "to correct unlawful employment

practices on the basis of sex and retaliation, and to provide appropriate relief to Debra Smith, who

was adversely affected by such practices during her employment with Airborne Express, Inc.,

('Airborne')."  First Amended Complaint at 1 (Doc. No. 8), filed Dec. 1, 2004.  The EEOC sued

Airborne (Ms. Smith's employer) as well Air One.  The EEOC alleges that at all relevant times

Air One had a contractual agreement with Airborne which provided that Air One employees,

including Ms. Smith, had to work at Airborne's Albuquerque facility.[1]  The EEOC alleges that Air

One "as a third party and an employer subject to Title VII, unlawfully interfered with Ms. Smith's

employment by creating a hostile work environment, which adversely affected the terms,

conditions and privileges of Smith's employment with her employer, Defendant Airborne."  *Id*. at

2.  The Plaintiff alleges that since November 2001 Air One interfered with Ms. Smith's

"employment opportunities with her employer by subjecting her to offensive comments and

conduct because of her sex, female" and by failing "to take immediate and appropriate corrective

_____

        [1]Air One attached a Cartage Agreement between Air One and Airborne (Ex.1) to its
Memorandum in Support of Motion to Dismiss Plaintiff's First Amended Complaint.  Although a
document referred to in a complaint may be reviewed by a court in determining a Fed. R. Civ. P.
12(b)(6) motion to dismiss, the Cartage Agreement provided by Air One will be accorded little
weight for two reasons. First, only the CEO from Air One signed the Cartage Agreement.
Second, if the Cartage Agreement is in fact legally binding, it became effective on January 26,
2003, over a year after the conduct complained of in this lawsuit began in November 2001.  *See
GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)("if a
plaintiff does not incorporate by reference or attach a document to its complaint, but the
document is referred to in the complaint and is central to the plaintiff's claim, a defendant may
submit <u>an indisputably authentic copy</u> to the court to be considered on a motion to
dismiss.")(emphasis added).

action." *Id*. at 4-5.  Air One argues that the EEOC's Title VII lawsuit must be dismissed against it because the EEOC has failed to allege that Air One was Ms. Smith's employer for Title VII purposes.

B.  Standard of Review

     In considering a motion to dismiss for failure to state a claim, the Court must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  The Court may dismiss the complaint if it appears to a certainty that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

C.  Discussion

     The parties agree that Ms. Smith and Air One did not have an explicit or direct employer-employee relationship.  Air One initially argued that the Court should apply a hybrid test to determine if there was an otherwise implicit employment relationship between Ms. Smith and Air One.  The Tenth Circuit, however, has held that the hybrid test is used only if there is an allegation that the charging party was an independent contractor as opposed to an "employee." *Bristol v. Board of County Com'rs of County of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002).  Here, the EEOC does not allege facts in the First Amended Complaint to support the contention that Ms. Smith or Airborne were independent contractors.  Instead, the EEOC argues that it has pled two theories of employer liability against Air One:  third-party interference liability and joint employer liability.

3

1.  Third-Party Interference

*Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973) established the

theory of third-party interference liability under Title VII.  The D.C. Circuit Court in *Sibley* held

that third parties, i.e., parties not "actual nor potential direct employers of particular

complainants," could be liable under Title VII if they "control access to such employment and ...

deny such access by reference to invidious criteria." *Id.* at 1342.  The third-party interference

principle is also advanced and approved of in the EEOC Compliance Manual.  Ex. A to Plaintiff

Equal Employment Opportunity Commission's Response to Defendant Air One Transport Group,

Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No.14 ), filed Jan. 20, 2005.

Air One argues that 1) the Tenth Circuit has not adopted the third-party interference theory; 2)

the third-party interference theory is contrary to a previous holding by this Court; 3) the third-

party interference theory is not widely-accepted; and 4) the EEOC Compliance Manual is entitled

to no deference by the Court.

a.  Whether the Tenth Circuit Has Approved the Third-Party Interference Theory

In 1979, the Tenth Circuit cited approvingly to *Sibley* in finding that there was an

employment relationship between Native American vendors on the Santa Fe Plaza and the

Museum of New Mexico although the Museum of New Mexico did not pay the Native Americans

vendors a salary.  *Livingston v. Ewing*, 601 F.2d 1110, 1114-15 (10th Cir. 1979).  The Tenth

Circuit also cited to *Sibley* in 1980 to support the proposition that the definition of "employer"

should be liberally construed.  *Owens v. Rush*, 636 F.2d 283, 287 (10th Cir. 1980).  Although

these cases do not explicitly adopt the theory of third-party interference, they do not reject that

theory either.  *See also Higgins v. Johnson County Medical Laboratories, Inc.*, 1996 WL 707102

*2 (D. Kan.)(applying third-party interference theory).

Air One argues, however, that the Tenth Circuit has implicitly rejected the third-party interference theory by applying tests like the hybrid test, integrated enterprise test, joint employer test, and the single-employer test to determine whether an employment relationship exists for Title VII purposes.  As noted above, the hybrid test applies to cases alleging an independent contractor relationship.  A hybrid test would therefore not preclude a third-party interference test in cases not involving an independent contractor relationship.  The integrated enterprise test is used to determine "whether a parent corporation is liable for the acts of its subsidiary." *Frank v. U.S. West*, 3 F.3d 1357, 1362 (10th Cir. 1993).  Clearly, the integrated enterprise test would not preclude the use of a third-party interference theory outside of a parent corporation-subsidiary situation.  A joint employer test determines whether two separate entities "co-determine the essential terms and conditions of employment" while the single employer test (also known as an economic realities test and in essence an integrated enterprise test) determines whether two separate entities should be treated as an integrated entity.  *Bristol*, 312 F.3d at 1218.  "[B]oth the joint-employer test and the single employer test are designed for situations where there is more than one alleged employer." *Id*.  In a third-party interference situation, the employee does not necessarily have to allege being employed by more than one employer.  Third-party interference can occur "even where an employment relationship has never existed between the third-party employer and the individual." Ex. A at 2-52.  A third-party interference claim or test is, therefore, distinct and separate from a joint employer or single employer test which require an allegation of more than one employer.  Consequently, the joint employer and single employer tests would not necessarily preclude a third-party interference claim in the Tenth Circuit.  In sum, the Tenth

Circuit's use of various tests for various employment situations to determine the existence of employment relationships does not prevent the EEOC from setting forth a third-party interference claim in this case.

> b.  The Court's Previous Holding Regarding the Use of a Third-Party Interference Theory

Next, Air One argues that this Court's holding in *Hunter, et al. v. PLB Enterprises, Inc., et al.*, Civ. No. 98-0077 JP/JHG, Memorandum Opinion and Order (Doc. No. 66), filed Oct. 18, 2000, precludes application of the third-party interference theory in this case.  In *Hunter*, this Court applied a single employer or economic realities test in the context of a franchise arrangement.  Although Air One asserts that it is irrelevant that *Hunter* involved a franchise arrangement, the Court finds that a franchise arrangement is sufficiently different from the situation at hand to distinguish *Hunter* from this case.  Consequently, *Hunter* does not preclude the application of a third-party interference theory.

> c.  Whether the Third-Party Interference Theory is Widespread

Air One also argues that the EEOC's representation of the widespread use of the third-party interference theory is erroneous.  For purposes of this motion to dismiss, the important question is whether a third-party interference theory is viable in this circuit, not whether that theory is necessarily "widespread" throughout other circuits.  As discussed already, the Court does not find that Tenth Circuit precedent or even precedent in this Court would prevent the EEOC from raising a third-party interference claim.

d.  Reference to the EEOC Compliance Manual

Finally, Air One argues that the EEOC Compliance Manual should be afforded no deference.  Documents like the EEOC Compliance Manual are "'entitled to respect'" as long as they have a "'power to persuade.'"  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)(quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  The EEOC Compliance Manual relies upon *Sibley* and *EEOC v. Foster Wheeler Constructors, Inc.*, 1999 WL 515524 (N.D. Ill.) to support its adoption of the third-party interference theory.  The EEOC Compliance Manual further disagrees with *Bloom v. Bexar County*, 130 F.3d 722, 724-25 (5th Cir. 1997) and *EEOC v. State of Ill.*, 69 F.3d 167, 169 (7th Cir. 1995), cases rejecting the third-party interference theory, because "statutory language reflects congressional intent to cover an employer that meets the statutory requirements and is in the position to interfere with an individual's employment with another employer.  It is especially inappropriate to impose additional requirements when doing so undermines the general remedial purpose of the EEO statutes."  EEOC Compliance Manual at n.129, 2-52.  The EEOC's rationale in support of the use of a third-party interference theory is sufficient to give the EEOC Compliance Manual's discussion of the theory of third-party interference a "power to persuade."  Hence, the EEOC's adoption of that theory is entitled to respect by this Court.  In giving the EEOC Compliance Manual's adoption of the third-party interference theory respect and in considering the general lack of persuasive argument against the use of a third-party interference theory, the Court concludes that the EEOC has stated a third-party interference claim upon which relief can be granted.

7

2.  Joint Employers

In describing the theory of joint employers, the Tenth Circuit has stated the following:

> Title VII case law recognizes that two separate entities may be a worker's employer if they share or codetermine matters governing the essential terms and conditions of the worker's employment.  When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker.  An independent entity with sufficient control over the terms and conditions of the employment of a worker formally employed by another is a joint employer within the scope of Title VII.  Thus two entities may both be a worker's employer if "they share or co-determine those matters governing the essential terms and conditions of employment."

*Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1329 (10th Cir. 2002)(citations omitted).  The First Amended Complaint does not allege that Air One was a joint employer of Ms. Smith or that Air One controlled the terms and conditions of Ms. Smith's employment with Airborne Express.  Rather, the First Amended Complaint alleges that Air One "as a third party and an employer subject to Title VII, unlawfully interfered with Ms. Smith's Employment by creating a hostile work environment, which adversely affected the terms, conditions and privileges of Smith's employment with her employer Defendant Airborne."  First Amended Complaint at 2 (emphasis added).  This allegation states a third-party interference claim, not a joint employer cause of action.  Consequently, the Court concludes that the EEOC has stated only a third-party interference claim against Air One.

IT IS ORDERED that Defendant Air One Transport Group, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 9) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE

8